[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Hugh McMillan, Jr., age 67 and the defendant, Mary O'Brien McMillan, age 37, whose maiden name was Mary O'Brien, were married on October 26, 1990 at Salisbury, CT Page 6955-Y Connecticut. This is the second marriage for the plaintiff who was divorced in 1984 after a thirty-six year marriage which produced one son, now 42 years old, and the first for the defendant. There are no children issue of this marriage.
The plaintiff commenced this action by service of a complaint for divorce on the grounds of irretrievable breakdown on April 2, 1992. The defendant, who did not desire a dissolution, reluctantly filed a cross complaint on July 21, 1993, two weeks before the scheduled contested trial. Both parties now agree that the marriage has irretrievably broken down.
Mr. McMillan and Miss O'Brien met in April 1988 at a tea cafe known as Chaiwalla operated by the defendant. They became romantically involved in August 1988 and continued their relationship for over two years before marrying in October, 1990. Although there was a considerable difference in age of thirty years between this fall and spring couple, that was not a problem according to the testimony. Prior to marriage the defendant made known to the plaintiff her desire to have a child and at that time he was agreeable. Subsequent to the marriage, however, the CT Page 6955-Z plaintiff reneged on his willingness to have a child although the sexual relationship between the parties would indicate ambivalent feelings on his part.
A month after the marriage, the plaintiff purchased in joint names property at 1 Main Street, Salisbury, for $350,000.00. He assisted the defendant in her daily workings of the business claiming to work up to eighteen hours a day. He claimed that this situation caused great stress and was one of the factors causing him not to want a child. Mr. McMillan is a very wealthy man who has not been employed since he got out of the Army in 1946. A cause of friction between the parties was the substantial fees charged by the plaintiff's attorneys to handle trust funds and personal funds. His reaction to his wife's concerns seem to the court to be unreasonable inasmuch as the exhibits show substantial expenditures for what appears to be routine financial and legal services.
After the marriage, Mrs. McMillan moved into Mr. McMillan's house at 58 Main Street, Salisbury. Although he had been married for many years previously, the plaintiff failed to recognize the CT Page 6955-AA normal desire of a woman to effect changes in the house to reflect her personality. According to the plaintiff, the defendant was a wonderful wife if he went along with her, but that she would "go into orbit" if he disagreed; Whether or not this is true, the same may be inferred as to the plaintiff as he would not tolerate even a question concerning his financial advisors.
The parties shared the same bedroom until the spring of 1992. On more than one occasion, the defendant believed she was pregnant. As indicated, the plaintiff commenced this action on April 2, 1992 at a time when the plaintiff believed she might be pregnant. Mrs. McMillan moved out of the home on May, 5, 1992. In August of 1992, Mr. McMillan moved into the small apartment occupied by the defendant at 1 Main Street, but this reconciliation did not last.
The plaintiff owns a house at 58 Main Street valued at $275,000.00, a one-half interest in 1 Main Street, valued at $200,000.00, a 1987 Toyota automobile valued at $5,500.00, personal property at $154,000.00, personal investments valued at CT Page 6955-BB $1,886,225.24 as of June 30, 1993. In addition, he is the beneficiary of two trust a one half interest in the Emma C. Rohnert Trust valued at 5.9 million, and the Hugh McMillan Trust valued at $1,229,417.03 which pays him no income at his request.
The defendant owns a one-half interest in 1 Main Street valued at $200,000, personal property at $10,000.00 and trust savings of $1,200.00. She has debts of $65,500.00 for personal loans to support her business. In addition, she received on the eve of trial a bill from her former attorney in the amount of $12,000.00. Attorney's fees of $13,500.00 had already been paid, $8,500.00 by the defendant and $5,000.00 by the plaintiff as awarded by the court.
From the evidence, the court finds that the primary cause of the breakdown rests with the plaintiff. He was inflexible in adjusting to married life, reneged on his wife's desire to have a child, and reacted irrationally when questioned with regard to his financial advisors. Mrs. McMillan devoted five years to a relationship which she did not wish to end. Mr. McMillan is secure financially while his wife is not. Her business does not show a profit although it does pay her expenses so long as she CT Page 6955-CC lives in the small apartment which also contains the business office. The defendant is entitled to be placed in at least a stable condition which the plaintiff can well afford. Based upon the factors set forth in Conn. Gen. Stat. Section 46b-81 and46b-82 including the length of the marriage, the cause for the dissolution, the ages of the parties, the amount and sources of income and the opportunity for future acquisition of capital assets and income, the court enters the following orders as part of the decree.
1. The marriage is broken down irretrievably and therefore a decree of dissolution shall enter.
2. The plaintiff shall transfer to the defendant his undivided one-half interest in 1 Main Street, Salisbury, Connecticut.
3. The plaintiff shall pay to the defendant lump sum alimony of $172,000.00 payable $72,000.00 on or before October 1, 1993, $50,000.00 on or before October 1, 1994 and $50,000.00 on or before October 1, 1995. CT Page 6955-DD
4. The plaintiff shall pay to the defendant alimony of $2,200.00 per month until January 1, 1995, commencing September 1993, payable on or before the 5th day of each month.
5. The plaintiff shall pay to the defendant counsel fees of $25,000.00 on or before September 1, 1993.
6. The plaintiff shall hold the defendant harmless on the bill of Attorney Carlo Forzani in an amount not to exceed $12,000.00.
7. The defendant may take a change of name to Mary O'Brien.
Judgment may enter accordingly.
PICKETT, J.